IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GALINA A. GAVRYUSHOVA,                                    Civil No. 05-208-CO

      Plaintiff,                                                          ORDER

          v.

JO ANNE B. BARNHART,
Commissioner, Social Security Commission,

      Defendant.


COONEY, Magistrate Judge.

      Plaintiff Galina A. Gavryushova brings this action pursuant to section 205(g) of the Social Security Act, as amended (Act), 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision denying plaintiff's application for supplemental security income.  The parties have executed written consents for entry of final judgment by a magistrate judge (#7).  28 U.S.C. § 636(c); Fed. R. Civ. P 73. For the several reasons set forth below, the decision of the Commissioner should be remanded for further administrative proceedings.

## BACKGROUND

Plaintiff applied for supplemental security income alleging disability commencing June 9, 2000.[1] Her applications were denied. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on May 4, 2004. Plaintiff, represented by counsel, appeared and testified, as did a medical expert, a vocational expert, and two lay witnesses. The ALJ rendered an adverse decision, and the Appeals Council, after considering additional evidence submitted by plaintiff, denied plaintiff's request for review.

At the time of the ALJ's decision, plaintiff was fifty-five years old. Plaintiff indicates that she has completed eleven years of schooling, and four or more years of college and one year of medical school, in Russia. She has relevant past work experience as a nursing supervisor, production line worker, janitor, and care giver. Plaintiff alleges disability as of May 20, 2002, based upon hypertension, gout, removal of right kidney, "chronic pielonephritis (L)," kidney stones, diabetes,

---

[1]    In her September 5, 2002, application, plaintiff alleged disability commencing on June 9, 2000. (Tr. 93.) However, in a Disability Adult Report dated the same date, plaintiff states that she became unable to work on May 20, 2002. (Tr. 190). The ALJ used the May 20, 2002, date in his decision. (Tr. 22.) Plaintiff submitted prior applications in April 2000 and December 2000, which were denied. (Tr. 2, 31-34, 48-51.)

arrhythmia, and hernia.[2] (Tr. 190.)  The relevant medical evidence is discussed below.

## STANDARDS

This court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court considers the record as a whole, and  weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence, Ceguerra v. Secretary of Health & Human Servs.,

---

[2]    The ALJ did not include plaintiff's claimed arrhythmia in his decision.  (See Tr. 354.) The court interprets plaintiff's claimed "chronic pielonephritis" as pyelonephritis, which is inflamation of the kidney and kidney pelvis.  Schmidt's Attorneys' Dictionary of Medicine (1962); Dorland's Illustrated Medical Dictionary (24th ed. 1965); Stedman's Medical Dictionary (26th ed. 1995).

933 F.2d 735, 738 (9th Cir. 1991).  The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."  Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

4 - ORDER

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the present case, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period under review. (Tr. 22, 26.)

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that plaintiff's hypertension, diabetes, obesity, gout, and hernia are severe impairments. (Tr. 23, 26.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that plaintiff's impairments, either singly or in combination, were not severe enough to meet or medically equal any of the listed impairments. (Tr. 24, 26.)

5 - ORDER

In step four, the Commissioner determines whether the claimant can still perform his "past relevant work." If the claimant is so able, then the Commissioner finds the claimant "not disabled." Otherwise, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week. Social Security Regulation (SSR) 96-8p. The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments. Id. In this case, the ALJ found that plaintiff could perform her past relevant work as a production line worker, nurse supervisor, and care giver. (Tr. 27, 28.) The ALJ found that plaintiff could perform her past relevant work and, therefore, found that plaintiff was not under a disability. (Tr. 26, 27.)

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner fails to meet this burden, then the claimant is deemed disabled. Here, the ALJ found that plaintiff was not disabled at step four and did not reach step five. (Tr. 26-27.)

## **DISCUSSION**

6 - ORDER

Plaintiff asserts that the ALJ's decision should be reversed because it is unsupported by substantial evidence and because it is based on improper legal standards.  Plaintiff argues that the ALJ erred by:  (1) improperly rejecting her treating physicians' opinions; (2) rejecting plaintiff's allegations of severe pain; (3) improperly failing to analyze and ignoring lay observer reporting; and (4) failing to fully develop the record.[3]

**Treating Physicians**

Plaintiff contends that the ALJ failed to give credence to the descriptions of plaintiff's treating physicians, David Ellison, M.D., and Melanie Ryan, M.D., that reflected that plaintiff was not medically capable of any employment.  Plaintiff also contends that the Appeals Council improperly failed to note the opinions of Bolek Brant, M.D., regarding her hernia, which the ALJ erroneously identified as not requiring surgery and as not impairing function in his questions of the medical examiner.  Defendant argues that the ALJ appropriately addressed the medical evidence and cited specific and legitimate reasons for adopting some medical sources' opinions and not others.  In her reply, plaintiff contends that the ALJ makes no mention of her treating physician, Dr. Hungerford, who advised that plaintiff not work.

---

[3]    Plaintiff incorporates by reference arguments made to the Appeals Council, Tr. 459-67).

Generally, the Commissioner gives more weight to the opinion of a treating source or examining source than to a source who has not treated or examined a claimant.  20 C.F.R. §§ 404.1527(d)(1)(2), 416.927(d)(1)(2); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  A treating physician is one who is employed to cure.  Magallanes, 881 F.2d at 751.  His opinion is given more weight because he has a greater opportunity to know and observe the patient.  Id.  Controlling weight will be given to a treating physician's opinion on the issues of the nature and severity of a claimant's impairment(s) if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record.  20 C.F.R. §§ 404.1527(d)(2), 416.926(d)(2).   "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability."  Magallanes, 881 F.2d at 751 (citing  Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989); 20 C.F.R. §§ 404.1527(e), 416.927(e); see also Montijo v. Secretary of HHS, 729 F.2d 599, 601 (9th Cir. 1984).

If the ALJ chooses to disregard a treating physician's or an examining physician's opinion, and that opinion is not contradicted by another doctor, he must set forth clear and convincing reasons for doing so.  Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir.

8 - ORDER

1984).  If a treating or examining physician's opinion is contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons, based on substantial evidence in the record, for disregarding the opinion of the treating or examining physician.  Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th Cir. 1996).  The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, then stating his interpretation, and making findings.   Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986); Rodriguez, 876 F.2d at 762.  Further, the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Lester, 81 F.3d at 830.

Here, the ALJ discussed the records of her treating physicians relating to the period September 2001 through early April 2003, including a letter written by Dr. Ryan on February 3, 2003.  The ALJ noted that her treating physician indicated that plaintiff "is somewhat limited in her daily activities from her hypertension, obesity, and probable left ventricular hypertrophy (Exhibit 13F-155 [Tr. 400-37])." (Tr. 23.) He also discussed her treating physician records from July 2003 through March 2004, (Tr. 439-58).

Dr. Ryan's treatment records do not support plaintiff's contention that she is not medically capable of any employment.  Dr. Ryan opined in February 2003 that plaintiff has multiple medical problems:  type II diabetes, with good control;

9 - ORDER

plaintiff's hypertension has been difficult to control and she is followed by specialists at the University Hospital; plaintiff's had a right nephrectomy in 1994 due to a staghorn calculus in the right kidney; and she has a history of chest pain.  As the ALJ stated in his decision, Dr. Ryan opined that plaintiff is "somewhat limited" in her daily activities from her hypertension, obesity, and probable left ventricular hypertrophy.  (Tr. 400.)

Based on the ALJ's decision, it appears that the ALJ accepted Dr. Ryan's opinions as to plaintiff's impairments, and her opinion that plaintiff's daily activities are "somewhat limited" due to these impairments.  Accordingly, the court finds that the ALJ properly considered the opinions of plaintiff's treating physician, Dr. Ryan.

However, the record also includes treatment records of Linda Hungerford, M.D., for the period February 2000 to June 2000.  Dr. Hungerford treated plaintiff primarily for her hypertension.  (Tr. 310-46.)  In March 2000, Dr. Hungerford wrote a letter excusing plaintiff from work for treatment of "an urgent medical problem" until further notice.  She noted that she had suggested to plaintiff that she apply for short-term disability.  (Tr. 322.)  The record also includes medical records from Dr. Ellison for the period November 2000 to January 2001.  (Tr. 347-61.)  Dr. Ellison treated plaintiff for severe hypertension.  Dr. Ellison's records indicate that plaintiff's hypertension is difficult to control, (Tr. 348, 356), and he modified her drug

regimen.  None of these records are referenced by the ALJ in his decision, and he makes no reference to Dr. Hungerford's opinion of disability.

The record shows that the Appeals Council considered the additional medical records of Dr. Brant submitted by plaintiff with her request for review.  (Tr. 9, 12.) Dr. Brant's records indicate that, in January 2001, plaintiff wanted to have a second repair of her hernia. Dr. Brant noted that plaintiff "works as a janitor and she says that her large abdomen and hernia interfere with her employment."  (Tr. 470.)  In February 2001, Dr. Brant noted again that, after a hernia was diagnosed by Dr. Divine, plaintiff wanted to have the hernia repaired and she also wanted plastic surgery repair of "her huge pannic[u]llus,[4]" which Dr. Brant believed could be performed at the same time.  (Tr. 469.)  Dr. Brant's records indicate that in September 2001, Dr. Labby at CareOregon, had reviewed plaintiff's records, and "felt that the tummy tuck was not necessary on this patient and that this will not be authorized."  (Tr. 468.)  Other records at that time, and in the record before the ALJ, indicate that plaintiff desired abdominal hernia repair,[5] (Tr. 422), that the panniculectomy was not essential but the hernia repair was "ok," (Tr. 421), and that

---

[4]    "Pannicullus," (see Tr. 421, 423), is a membrane, a layer, a sheet of tissue. Schmidt's Attorneys' Dictionary of Medicine (1962); Dorland's Illustrated Medical Dictionary (24th ed. 1965); Stedman's Medical Dictionary (26th ed. 1995).

[5]    These progress notes indicate that plaintiff had been seen by "Dr. Bolek" about her postsurgical abdominal hernia.  (Tr. 422.)

the hernia repair and panniculectomy had been scheduled, but that the panniculectomy was not covered, (Tr. 421, 423). These records also reveal that in August 2001, the chart notes concerning Dr. Labby's opinion that the panniculectomy was not essential and that the "Hernia surgery was ok but not pann," were reviewed; the reviewer noted "Agreed [with] need for hernia repair. Hopefully surgical consult will agree to do hernia repair [without] panniculectomy." (Tr. 421.) It appears from the record that plaintiff elected not to have the surgery. On June 30, 2004, following the hearing before the ALJ, plaintiff had questions about a hernia repair as noted in progress notes of the Multnomah County Health Department. (Tr. 472.) A "Primary Care Problem List" with the progress notes includes "probable surgical hernia R flank" under "Temporary Problems," whereas other conditions are noted under "Chronic Problems/Surgeries/Procedures." (Tr. 474.) In the records before the ALJ it is noted that, in June 2002, plaintiff's hernia bothered her and she wanted to try a hernia belt, and one was ordered. (Tr. 409.) On this record, the court finds that Dr. Brant's records were considered by the Appeals Council, and that there was nothing in those records which differed in any substantial respect from those upon which the ALJ based his decision.

**Plaintiff's Testimony**

Plaintiff contends that, contrary to applicable law, the ALJ demanded objective evidence of the existence of pathology, but also objective evidence of the

severity of such impairing pathology, which was improper.  She contends that the

ALJ failed to give specific reasons supported by evidence in the record to reject her

testimony concerning her severe pain.    Defendant responds that the ALJ

appropriately found plaintiff less than wholly credible.  She contends that the ALJ

cited specific, clear and convincing reasons for doubting that plaintiff's impairments

were of the disabling severity she alleged.

In rejecting a claimant's testimony, the Commissioner must perform a two

stage analysis. Smolen v Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  The first stage

is the Cotton test, Cotton, 799 F.2d 1403.  Under this test a claimant must produce

objective medical evidence of an underlying impairment which could reasonably be

expected to produce the pain or other symptoms alleged.  All that is required of the

claimant is that he produce objective evidence of an impairment or impairments and

show that the impairment or impairments could produce some degree of the

symptoms alleged.  In addition, there must be no evidence of malingering.

Plaintiff has produced objective evidence of an impairment that could

reasonably be expected to produce some degree of symptoms resulting in

limitations.  (Tr. 20.)  The ALJ did not find that plaintiff is malingering.  Therefore,

the analysis moves to a credibility determination.

Under the second part of the analysis, the Commissioner must analyze the

credibility of a claimant's testimony regarding the severity of claimant's symptoms.

13 - ORDER

The Commissioner can reject a claimant's symptom testimony only if she makes specific findings, stating clear and convincing reasons for doing so. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993); <u>Smolen</u>, 80 F.3d at 1281-82. General findings are insufficient; rather, the ALJ must identify what testimony is not credible, and what evidence suggests that the testimony is not credible. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). The Commissioner cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. <u>Cotton</u>, 799 F.2d 1403.

In determining a claimant's credibility the Commissioner may consider, for example:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . .  In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . . Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

<u>Smolen</u>, 80 F.3d at 1284.

Here, the ALJ found that plaintiff's "allegations are not entirely credible in light of the treatment record and her daily activities." (Tr. 24.) He went on to note that,

14 - ORDER

in August 2002, plaintiff stopped participating in vocational rehabilitation because she had to care for her mother, and did not report any physical difficulties preventing her from pursuing vocational rehabilitation. He found that plaintiff's care giver activities and her janitorial work were not consistent with her allegations of debilitating pain.[6] He found that, while plaintiff had a gout attack in May 2002 and September 2002, and mild gout in January 2003, treatment records did not reflect exacerbations of gout after September 2002. He found that plaintiff's hypertension and diabetes were well-controlled with medications. He found that plaintiff has not used a hernia belt although it was ordered by her physician.

It is true, as plaintiff argues, that the ALJ asked the medical expert, Dr. Duckler, "is there objective evidence that's going to support her complaints that we know she has of pain that would cause her to most likely miss two days a month of work?" (Tr. 499.) However, in his decision, the ALJ did not rely solely on corroboration of plaintiff's pain testimony because it was not fully corroborated by objective medical findings in not fully accepting plaintiff's allegations of pain.

---

[6] The court notes that, in his decision, the ALJ refers to plaintiff's daily activities in the sense of her work activities. In his recitation of plaintiff's allegations of pain and limitations, the ALJ did not refer to any written reports and forms completed by plaintiff for disability purposes relating to her pain, fatigue, and activities of daily living, which are in the record, (see, e.g., Tr. 134-39, 175-77, 178-81, 182-86, 231-37, 238-41, 242-44), but referenced only plaintiff's testimony at the hearing. See infra.

15 - ORDER

The court finds that the ALJ's reasons for finding plaintiff's allegations of pain not entirely credible are supported by the record.  In August 2002, plaintiff  called the vocational services office to report that she was not able to participate in VR activities and did not plan to work because her mother had a stroke and she needed to take care of her.  (Tr. 94, 245.)

Plaintiff worked as a care giver from October 2000 to January 31, 2003.  (Tr. 256, 277.)  Plaintiff had worked as a janitor from July 1996 and was working one hour a day at the time of her hearing in May 2004.  Sometime after February 27, 2003, plaintiff described her janitorial work as, "pick up and throw away trash, dusting, clean fingerprints on the doors, vacuuming."  (Tr. 265.)  At the time of plaintiff's hearing, her supervisor testified that her job also included cleaning the restroom and lunchroom, and "Sometimes its heavy garbage."  (Tr. 505.)

There are references throughout the record of treatment of plaintiff's gout but, in February 2003, her treating physician does not include gout as one of plaintiff's medical problems and, therefore, she included no limitations due to her gout.  (Tr. 400.)

The records show that plaintiff has been followed through the years for severe hypertension.  (See, e.g., Tr. 310-46 , 348-356, 404, 405, 409, 411, 422, 424, 439/447, 441, 444.)  Her treating physician noted that a blood pressure reading of 190/100 on August 16, 2001, (Tr. 424), indicated "poor control," (Tr.

16 - ORDER

422), and a reading of 158/80 on June 20, 2002, indicated "good control," (Tr. 409).

The medical expert testified at the hearing that plaintiff's blood pressure of 140/73

in February 2004, (see Tr. 441), was "fairly normal," (Tr. 484). The court notes that

plaintiff's reading in March 2004 was 160/98, (Tr. 439/447). Dr. Ryan opined in

February 2003 that, with her hypertension and obesity, plaintiff is "somewhat

limited" in her daily activities. (Tr. 400.) The medical records show that plaintiff's

diabetes was initially controlled by diet in late 2001 and early 2002, that her labs as

to her diabetes were good in September 2002, (Tr. 407, 412, 414, 415), but that

she was started on Glucophage in February 2004, (Tr. 440).

    As discussed above, the medical records show that, at least as early as

February 2001, plaintiff wanted to have a hernia repair, (Tr. 422); that a hernia

repair and tummy tuck was scheduled, but plaintiff's insurance would not pay for

a tummy tuck, (Tr. 421, 423); and that, in June 2002, plaintiff asked her treating

physician for a hernia belt, and one was ordered for her, (Tr. 409). The medical

expert, Dr. Duckler, testified at the hearing that plaintiff could have pain because

the hernia bulges out, but he agreed that the pain could be controlled by wearing

an abdominal support. (Tr. 496-97.) Dr. Duckler indicated in his testimony that,

for a flank hernia, a hernia support goes around the entire abdomen and back. (Tr.

501.)

17 - ORDER

On this record, the court finds that the ALJ provided specific, and clear and convincing reasons to not fully credit plaintiff's testimony, which are supported by substantial evidence in the record.

**Lay testimony**

Plaintiff contends that the ALJ improperly failed to analyze and otherwise ignored lay observer reporting. She contends that the ALJ referred to the testimony of Faia Stevenson, but not her written information, and he did not state what value it provided in his opinion of plaintiff's functioning. Plaintiff concedes in her reply that the ALJ referred to the testimony of Sergei Gubin, but she contends that he dismissed Mr. Gubin's observations and those of Ms. Stevenson on the ground that her missed work and group activities were not related to her medical impairments, without any rationale for this conclusory assertion. Defendant responds that the ALJ appropriately addressed the lay witness testimony; she contends that the ALJ did not discount their observations because, while they were compatible with an individual as disabled as plaintiff claims, they are also compatible with the ALJ's RFC findings.

An ALJ must consider the testimony of friends and family members. <u>Smolen</u>, 80 F.3d at 1288. To disregard such testimony violates 20 C.F.R. §§ 404.1513(e)(2), 416.913(e)(2), which mandates consideration of observations by non-medical sources regarding how an impairment affects a claimant's ability to work. An ALJ

may reject lay witness testimony only if "reasons that are germane to each witness" are given.  Dodrill, 12 F.3d at 918; Nguyen, 100 F.3d at 1467; Smolen, 80 F.3d at 1288-89.    Lay witness testimony may not be disregarded without comment. Nguyen, 100 F.3d at 1467; Dodrill, 12 F.3d at 918.

In his decision, the ALJ recounts the testimony of plaintiff's son-in-law, Mr. Gubin, and plaintiff's friend, Ms. Stevenson, given at the hearing; however, there is no indication that the ALJ considered the disability forms completed by Ms. Stevenson which are in the record, (see e.g., Tr. 211-22).  The ALJ found that, "While the claimant may miss work and group activities as alleged by her son-in-law and Ms. Stevenson, there is no evidence that her absences are the result of any medically determinable impairments."  (Tr. 24.)  He makes no other reference to Mr. Gubin's or Ms. Stevenson's observations, except to state that Ms. Stevenson's allegations that plaintiff suffers from shortness of breath are not supported by the treatment record.  (Tr. 24-25.)

The ALJ's finding that there is no evidence that plaintiff's absences are  the result of a medically determinable impairment as alleged by Mr. Gubin and Ms. Stevenson  is not supported by the record.  At the hearing, in answer to a question by plaintiff's attorney of how often Mr. Gubin had to cover for plaintiff or get somebody to cover for her, Mr. Gubin answered:

19 - ORDER

> Sometimes she's working whole week five days, but it's – but many times it's usually one day a week, probably two day a week she's called to me and tells I couldn't handle, I feel very good [sic], my blood pressure very high, I couldn't drive, dangerous.  I just say ok, just cover this place.

(Tr. 506.)  He also testified with regard to plaintiff's production job that, "I know just about she's complaining about health, how she feels."  (Tr. 508.)   Ms. Stevenson testified:  "Even on a daily basis like not every day, but very often she's absent, you know and we have some like kind of home church groups and she's very often absent because of her condition.  She can't make it."  (Tr. 511.)  In a Third Party Information on Activities of Daily Living and Socialization form dated September 25, 2002, Ms. Stevenson answered the question, "Is there anything about this person's behavior that would interfere with his/her ability to work on a regular basis?" in the affirmative, and explained that, "Her medical condition as: high blood pressure, pain of arthritis, hernia."  (Tr. 221.)  She also stated in the Remarks section of the form that, "Her arthritic pain is getting worse.  Pain severe increasing making her disable [sic] for weeks.  She cannot get up from [] bed for 2-3 days in days of severe pain.  Her hernia getting out and making her unable to do activities of daily living."  (Tr. 222.)

On this record, the court finds that the ALJ failed to properly discount the observations of plaintiff's lay witnesses.

**Development of the record**

20 - ORDER

Plaintiff contends that the responsibility to develop the record is that of defendant, including the ALJ.  She contends that the ALJ's caustic response to counsel's requests that the ALJ obtain certain medical material and his refusal to develop the record clearly reflects ALJ antagonism to her counsel but also his obligation to develop the record.  Defendant responds that the ALJ fully and fairly developed the record and was under no duty to order any more medical records or any further examinations of plaintiff.

In the Ninth Circuit, the ALJ has an "independent '"duty to fully and fairly develop the record and to assure that the claimant's interests are considered."'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288).

> Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.

Tonapetyan, 242 F.3d at 1150 (citations omitted).  When the claimant is not represented, the ALJ must be "especially diligent" in exploring all the relevant facts. Id.

The record shows that, through her counsel, plaintiff requested of the Office of Hearings and Appeals that it obtain medical records relative to treatment after

21 - ORDER

January 10, 2001, because she had been informed that it would cost a minimum of $25.00, plus 25 cents for every page over ten pages, and she was not in a position to prepay the costs and her attorney did not have the current capacity to finance "this and the multiple other claims." (Tr. 278.) The ALJ denied plaintiff's request on the grounds that there was no evidence of any relevance; the efforts of the attorney showed that OHSU was tired of never paying for records; and the request did not comply with proper request for subpoenas. (Tr. 279; see 280-82.) The retainer agreement between plaintiff and her attorney provides that, as to costs and expenses, out-of-pocket expenses, including costs of medical reports or examinations, incurred by the attorney are to be paid by plaintiff as billed. (Tr. 66-68.) In his decision, the ALJ addressed plaintiff's attorney's request that additional medical records be obtained from Oregon Health Sciences University (OHSU). The ALJ found that the record contained recent medical evidence and was current through March 2004; her treating physician indicated that she was followed at OHSU for her hypertension which had been difficult to control, and her hypertension is now well-controlled." (Tr. 26.) The ALJ found that no further relevant information would be gleaned from older records requested by plaintiff's attorney. He stated that plaintiff's attorney "has a long history of not developing the medical evidence for his clients even though he covers that payment in his retainer agreements [and] He insists that the Office of Hearings and Appeals pay for all the costs of the records

22 - ORDER

he wants, even if they do not pertain to the relevant time period." (Tr. 26.) The ALJ stated he would order the records if there was any hope that they would assist him in making a different determination, but plaintiff continued to work part-time and retained the RFC to perform her past relevant work even accepting her allegations of severe impairments. (Tr. 26.)

The court finds that the reasons articulated by the ALJ in his decision for not obtaining the additional records are supported by the record. The record before the ALJ was adequate to allow him to make his decision without further development of the record in that regard.

As to any lack of impartiality or bias of the ALJ, the court presumes that the ALJ is unbiased, and plaintiff has not set forth any showing of conflict of interest or other specific reason for the court to consider. See Schweiker v. McClure, 456 U.S. 188, 196-96 (1982); Withrow v. Larkin, 421 U.S. 35, 47 (1975).

The court finds that the ALJ did not err in his development of the record.

## Conclusion

The court has found that the ALJ erred in failing to consider the records and opinions of plaintiff's treating physicians, Dr. Ellison and Dr. Hungerford, and by failing to properly consider the observations of plaintiff's lay witnesses, Mr. Gubin and Ms. Stevenson.

23 - ORDER

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing Stone v. Heckler, 761 F.2d 530 (9th Cir. 1985)). Remand is appropriate where further proceedings would be likely to clear up defects in the administrative proceedings, unless the new proceedings would simply serve to delay the receipt of benefits and are unlikely to add to the existing findings. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

The Ninth Circuit has found that, where the ALJ fails to make proper findings as to credibility of a claimant's excess pain testimony, the claimant's testimony will be established as true, Varney v. Secretary of Health and Human Servs., 859 F.2d 1396, 1401 (9th Cir. 1988); see Smolen, 80 F.3d at 1292, and, where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or an examining physician, the physician's opinion is credited as a matter of law, see Lester, 81 F.3d at 834; Smolen, 80 F.3d at 1292; Schneider v. Commissioner, 223 F.3d 968, 976 (9th Cir. 2000) (giving effect to lay testimony).

In this case, because the ALJ improperly rejected evidence and that evidence is credited as a matter of law, the Smolen test must be applied to determine whether a remand for an award of benefits is appropriate. Smolen, 80 F.3d at 1292. Under the Smolen test, a remand for benefits is warranted in cases where (1) evidence is accepted as a matter of law because the ALJ failed to provide legally

24 - ORDER

sufficient reasons for rejecting it; (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  Id.; Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000); Schneider, 223 F.3d at 976.

Under the Smolen test, "outstanding issues" that may require further proceedings "certainly" include the situation where a finding of disabled is not mandated upon crediting improperly rejected testimony. Harman, 211 F.3d at 1178 n.7.  Also, "In cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits." Harman, 211 F.3d at 1180-81.

Here, remand is appropriate as outstanding issues remain unresolved. Disability is not established when this court credits the improperly rejected opinion evidence.  Dr. Hungerford excused plaintiff from work due to an urgent medical problem and suggested that plaintiff apply for short-term disability; she later released plaintiff to work at plaintiff's request.  (Tr. 300, 310.)  As to the observations of Mr. Gubin and Ms. Stevenson, there is no vocational testimony as to whether plaintiff could perform her past relevant work with the limitations noted

by them, or whether plaintiff could perform other work at a step five analysis.[7]  The ALJ made no step five determination.

This case is therefore remanded for further administrative proceedings.  On remand, the ALJ must accept the evidence credited by the court as a matter of law. Harman, 211 F.3d at 1179.   The Commissioner may, of course, find that an immediate award of benefits is appropriate upon accepting this evidence.  If that is not the case, the record shall be further developed upon remand.  However, the ALJ is not prohibited from remedying errors in his initial disability determination that were not based on evidence that is credited as a matter of law, or from considering new evidence he never considered, or from revising the initial decision to reflect a change of position based upon this new evidence.  Id. at 1180-81.  Nor is the ALJ prohibited from evaluating the credited physician's opinion and giving that opinion the appropriate weight in light of the other physician's opinions in the record and any new evidence found upon further development of the record.  Holohan v. Massanari, 246 F.3d 1195, 1203 n.2 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d); 416.927(d).

---

[7]    The ALJ excused the medical expert and vocational expert from the hearing before Mr. Gubin and Ms. Stevenson testified.

## **ORDER**

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is ordered that the decision of the Commissioner is reversed and the matter remanded for further administrative proceedings, and that judgment be entered accordingly.

IT IS SO ORDERED.

DATED this ___2___ day of May, 2006.


_____/s/_____
JOHN P. COONEY
United States Magistrate Judge

27 - ORDER